Thomas T. CALDWELL, Jr., Appellant,

v.

UNITED STATES, Appellee.

No. 87–891.

District of Columbia Court of Appeals.

Argued Feb. 7, 1991.
Decided June 27, 1991.

he has not done so.

G. Godwin Oyewole, appointed by this court, for appellant. Joanne Roney Hepworth, appointed by this court, was on the brief, for appellant.

William R. Cowden, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., Michael W. Farrell and Mary Ellen Abrecht, Asst. U.S. Attys. at the time the brief was filed, and Terence J. Keeney and Patricia A. Riley, Asst. U.S. Attys., were on the brief, for appellee.

Before ROGERS, Chief Judge, and TERRY and STEADMAN, Associate Judges.

ROGERS, Chief Judge:

As part of a plea agreement, appellant Thomas T. Caldwell pled guilty to two counts of assault with a dangerous weapon and criminal contempt. The contempt plea was based on a count in an indictment charging him under D.C.Code § 11–944(a) (Supp.1990), for which he received a sentence of seven to twenty-one years imprisonment. On appeal he contends that his sentence for contempt was illegal since it exceeded the maximum sentence for contempt under D.C.Code § 23–1329(c) (1989) for violation of a condition of pretrial re-

lease. He also assigns as error the trial judge's reliance on unverified assertions made by the prosecutor at the time of sentencing. Finally, he contends that the judge abused his discretion in imposing a sentence that "clearly was not intended to preserve the power and dignity of the court, or to punish him for disobedience to its orders." Although we conclude that appellant's first two contentions warrant no relief, we agree with his contention regarding his sentence for contempt and remand the case for resentencing for contempt consistent with the principle of proportionality.

I.

Appellant was indicted, following a complaint by his girlfriend relating to events on December 5, 1986, for rape while armed, D.C.Code §§ 22–2801 and –3202 (1989), kidnapping while armed, id. §§ 22–2101 and –3202, two counts of sodomy, id. § 22–3502, assault with a dangerous weapon (lit cigarette), id. § 22–502, and assault with a dangerous weapon (stick). Id. As a condition of his release, he was ordered, inter alia, to stay away from his girlfriend and refrain from criminal conduct. Nevertheless, on March 11, 1987, two weeks before his trial was scheduled to begin, appellant drove to the street where his girlfriend lived, and upon seeing her, drove his car at her, knocking a floor length mirror and a square mirror she was holding to the ground.

The grand jury returned a new indictment charging all of the former counts plus assault with intent to kill while armed (motor vehicle), D.C.Code §§ 22–501 and –3202 (1989), obstruction of justice, id. § 22–722(a)(1), and contempt, id. § 11–944(a), the new counts arising out of appellant's conduct on March 11, 1987. At the plea hearing, the trial judge explained the implications of a guilty plea, including the rights appellant would waive and the possible terms of imprisonment he faced.[1] Appel-

---

1. The judge recited the penalties and afforded appellant a chance to respond before accepting appellant's guilty plea to that charge:

Q. Do you understand that on the contempt charge I could sentence you to up to

lant thereafter entered pleas of guilty to assault with a dangerous weapon (stick) on December 5, 1986, to a second count of assault with a dangerous weapon (motor vehicle) on March 11, 1987, and to criminal contempt, also on March 11, 1987; the government dismissed the other charges. At sentencing, the prosecutor referred to the presentence report, which recounted appellant's prior assaultive behavior toward other women. The trial judge sentenced appellant to three to nine years imprisonment on each assault count, and seven to twenty-one years for contempt, to run concurrently with the sentence on the March 11, 1987, assault count.

## II.

■ As a threshold issue, the government contends that the appeal, other than appellant's claim that the trial judge abused his discretion in imposing an excessive sentence for contempt, *see* Part IV, *infra*, should be dismissed because appellant waived his right to appeal his conviction by pleading guilty to contempt. *Bettis v. United States*, 325 A.2d 190, 194 (D.C.1974) ("as a practical matter virtually every possible avenue of appeal is waived by a guilty plea"). The government argues that, instead of a direct appeal of his conviction, appellant should have filed a collateral attack by motion to withdraw his guilty plea under Super.Ct.Crim.R. 32(e) or to vacate his sentence under D.C.Code § 23–110 (citing *Lorimer v. United States*, 425 A.2d 1306 (D.C.1981) (per curiam)); *see also Morrison v. United States*, 579 A.2d 686, 689 (D.C.1990); *McClurkin v. United States*, 472 A.2d 1348, 1352 (D.C.), *cert. denied*, 469 U.S. 838, 105 S.Ct. 136, 83 L.Ed.2d 76 (1984).

*Lorimer*, however, involved a challenge to the voluntariness of a guilty plea, and the court there stated that "the only issues that can be raised on this appeal are the exercise of jurisdiction by the trial court and the legality of the sentence imposed." 425 A.2d at 1308 (citations omitted). *Cf. Robinson v. United States*, 454 A.2d 810 (D.C.1982) (illegal sentence can be corrected at any time); Super.Ct.Crim.R. 35. An illegal sentence

is one "at variance with the controlling sentencing statute," *Prince v. United States*, 432 A.2d 720, 721 (D.C.1981) (per curiam), or "illegal" in the sense that the court goes beyond its authority by acting without jurisdiction or imposing a sentence in excess of the statutory maximum provided...." *Robinson v. United States*, [454 A.2d 810, 813 (D.C.1982)].

*Allen v. United States*, 495 A.2d 1145, 1149 (D.C.1985) (en banc). Appellant here is not challenging his conviction or the voluntariness of his plea, but rather the legality of his sentence for contempt because it exceeds the maximum penalty set forth in D.C.Code § 23–1329(c) (1989). Regardless of its merits, the appeal of the legality of his sentence is, therefore, properly before us.

## III.

■ The grand jury indictment charged appellant with contempt of court, not under D.C.Code § 23–1329, but under D.C.Code § 11–944(a), which provides:

In addition to the powers conferred by section 402 of title 18, United States Code [defining acts constituting contempt], the Superior Court, or a judge thereof, may punish for *disobedience of an order* or for contempt committed in

---

life imprisonment? Do you understand that? Has that been explained to you?

A. Yes.

Q. There's no limit on the amount of time I could give you on the contempt charge, do you understand that?

A. Yes, Your Honor.

Q. Although under the law of this jurisdiction the most I could give you would be 15 years to life. I couldn't give you anything greater than that. But I could give you 15 years to life on that and could make the other charges consecutive to that which means I could give you a total on the bottom of 25 years in jail to life. Do you understand that?

A. Yes, Your Honor.

Q. Again as to the charge of contempt, how do you plead, guilty or not guilty?

A. I plead guilty.

THE COURT: Very well, I'll accept the pleas.

the presence of the court. [Emphasis added]

There is no limitation on the length of the sentence for criminal contempt. *See* D.C.Code § 11–944(b)(1) (Supp.1990). Appellant disobeyed an order to stay away from his girlfriend, the complainant. The trial court had the power under § 11–944 to punish for disobedience of this order. "[T]he elimination of any limit on the nature or amount of the potential penalty which could be imposed by the Superior Court for criminal contempt" under § 11–944, *In re Evans*, 411 A.2d 984, 990 (D.C.1980), effectively exposed appellant to a maximum of 15 years to life imprisonment. *See Warring v. Huff*, 74 U.S.App. D.C. 302, 303, 122 F.2d 641, 642, *cert. denied*, 314 U.S. 678, 62 S.Ct. 183, 86 L.Ed. 543 (1941); D.C.Code § 24–203 (1989). The judge informed appellant of his exposure to this sentence before accepting his guilty plea. By pleading guilty to this charge, appellant agreed to subject himself to the potential punishment under that provision of the statute.

■ Appellant contends, however, that when § 11–944 is applied to disobedience of an order which is a condition of pretrial release under § 23–1321, the maximum punishment must be limited by the provisions of D.C.Code § 23–1329(c) (1989), which explicitly provides for contempt when a condition of pretrial release is violated. D.C.Code § 23–1329(c) provides:

> Any person found guilty of criminal contempt for violation of a condition of release shall be imprisoned for not more than six months, or fined not more than $1,000 or both.

Appellant argues that because § 23–1329(c) is the more specific statute, expressly addressing pretrial release contempt, its sentencing provision, rather than § 11–944, which addresses the general power of contempt, must apply.

■ The rules of statutory construction do not support this conclusion. When two statutes allow different penalties for the same act, the prosecutor has discretion in selecting which of the two statutes to apply, so long as the selection does not discriminate against any class of defendants. *Evans v. United States*, 417 A.2d 963, 965 (D.C.1980) (citing *United States v. Batchelder*, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979)). Furthermore, the court will "make 'every effort' to reconcile the allegedly conflicting statutes and to give effect to the language and intent of both." *Gonzalez v. United States* 498 A.2d 1172, 1174 (D.C.1985) (penalty for work release failure-to-return is not exclusive penalty but may be prosecuted under prison breach statute) (quoting *District of Columbia v. Smith*, 329 A.2d 128, 130 (D.C.1974)). In addition:

> Absent any evidence whatsoever that Congress intended [the more specific statute] to constitute the sole penalty under these circumstances, we believe that in and of itself 'application of the rule that the specific statute prevails over the general [statute] to compel prosecution under [the specific statute] ... is not sufficient to show a legislative preference for prosecution under one applicable statute rather than the other.'

*Id.* at 1176 (citations omitted).

The legislative history of § 23–1329 does not reveal an intent by Congress to override the unlimited sentencing provision of § 11–944 in cases involving violations of conditions of pretrial release under § 23–1321. Rather, Congress intended § 23–1329 to provide expedited punishment for violation of a condition of pretrial release, stating explicitly that in addition to revocation of release, "[t]he second sanction is a clear and specific contempt section to supplement the vague provision in 18 U.S.C. § 3151 which is reenacted in section 23–1330 of this Act." [2] 116 CONG.REC. H2079 (Mar. 19, 1970). Furthermore, the legislative history indicates that:

> Section 23–1330 is intended to make it clear that nothing in this Act is to be construed to interfere with or prevent

---

**2.** D.C.Code § 23–1330 provides:
Nothing in this subchapter shall interfere with or prevent the exercise by any court of the

United States of its power to punish for contempt.

the exercise by any court in the District of Columbia of its power to punish for contempt. Thus the contempt power spelled out in section 23–1329 does not repeal or revoke any other contempt power vested in the courts.

*Id.* Consequently, rather than one statute qualifying the sentencing provisions of the other, the two contempt statutes "merely provide alternative means of prosecuting" contempt for violation of a condition of pretrial release. *See Gonzalez, supra,* 498 A.2d at 1176.

That § 23–1329 was not meant to limit a sentence under § 11–944 is further shown by the policy concerns underlying its enactment. Congress was concerned with improving enforcement of violations of pretrial release conditions. *See* 116 Cong.Rec. H2079, *supra.* Section 23–1329 advanced this goal by allowing a court to try contempt charges without a jury and in an expedited manner rather than seeking enforcement by other means. *See id; but see Evans, supra,* 411 A.2d at 985 (right to jury trial under Sixth Amendment and D.C.Code § 16–705(b) when penalty exceeds six months' imprisonment).

Therefore, we conclude that § 11–944 operates independently of and in addition to § 23–1329(c), so that the sentencing limit of six months' imprisonment and $1,000 does not apply to convictions for violations of a pretrial release order constituting contempt under § 11–944. Appellant willfully disobeyed a court order to stay away from the complainant, and the statute under which he was indicted, § 11–944, clearly allows a court to punish for disobedience of its order, including a pretrial release order, and places no limits on the possible punishment.[3]

## IV.

Appellant also contends that the judge at sentencing relied on the prosecutor's recitation of unsworn evidence, unverified statements of persons unavailable for cross examination, and incidents of assault which were never adjudicated and which appellant denied but had no opportunity to rebut.[4] We find no abuse of discretion by the trial judge.

■ A judge has considerable discretion in conducting a sentencing proceeding.

> It is well settled that trial judges have great latitude in the sentencing process. The court may examine any reliable evidence, including that which was not introduced at trial, and may consider a wide range of facts concerning a defendant's character and his crime.

*Williams v. United States,* 427 A.2d 901, 904 (D.C.1980) (citations omitted), *cert. denied,* 450 U.S. 1043, 101 S.Ct. 1763, 68 L.Ed.2d 241 (1981); *see also Johnson v. United States,* 508 A.2d 910, 911 (D.C.1985). This latitude includes considering evidence that would normally be inadmissible at trial. *United States v. Campbell,* 221 U.S.App.D.C. 367, 378, 684 F.2d

---

**3.** Appellant's further argument that the release order, setting forth the conditions of pretrial release, only gave notice of a possible contempt prosecution with a punishment of six months' imprisonment and a $1,000 fine is unavailing. *See Gonzalez, supra,* 498 A.2d at 1177 (where two different statutory provisions clearly state what conduct is prohibited, the fact that the same conduct violates both provisions does not create a due process violation due to lack of notice). Appellant's reliance on *McMillian v. United States,* 326 A.2d 241 (D.C.1974) (per curiam), is misplaced. While the court stated that "Congress has adopted legislation specifically providing remedies and penalties for violations of conditions of pretrial release," it did so only by way of pointing out that, although prosecution for prison breach was prohibited, other penalties were available. 326 A.2d at 243. *See also Evans, supra,* 417 A.2d at 964 n. 4 (contract law principles governing election of remedies inapplicable to bar a criminal prosecution); *United States v. DePugh,* 434 F.2d 548, 553 (8th Cir.1970) (quoting testimony of Deputy Attorney General that printed warnings of penalties for violations of terms of release are intended to deter violations by the accused, and not to bind government to specific penalties).

**4.** Appellant identified as error (1) the judge's belief that appellant had assaulted not one, but two women, (2) the judge's statement that the complainant could have died of her injuries, when in fact she was not even admitted to the hospital for them, and (3) the judge's apparent reliance on hearsay statements offered by the prosecutor indicating that appellant had had prior violent encounters with other women which did not result in criminal charges.

141, 152 (1982) (citing *Williams v. Oklahoma*, 358 U.S. 576, 584, 79 S.Ct. 421, 426, 3 L.Ed.2d 516 (1959)). However, this discretion has some limitations arising from the constitutional guarantee of due process, *id.* 221 U.S.App.D.C. at 379, 684 F.2d at 153 (citing, *inter alia, Dorszynski v. United States*, 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974)), and due process is violated when the sentencing judge relies on "material false assumptions as to any facts relevant to sentencing...." *United States v. Hamid*, 531 A.2d 628, 644 (D.C.1987) (quoting *United States v. Malcolm*, 432 F.2d 809 (2d Cir.1970)); *see also McPhaul v. United States*, 452 A.2d 371 (D.C.1982) (in exercise of supervisory power case is remanded for resentencing where a judge relied on an assumption contrary to a stipulation by the parties). Such is not the case here.

■ First, the judge had before him the presentence report as well as appellant's own memorandum in aid of sentencing and appellant's admissions. *See Butler v. United States*, 379 A.2d 948, 950 (D.C.1977) (sentencing judge may consider admissions in presentence report) (citing *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949)); *Warren v. United States*, 310 A.2d 228, 229 (D.C.1973) (trial judge could consider admission at post-plea evidentiary hearing). The presentence report accurately reflected that, at the time of the instant offenses, appellant was on probation in Maryland for an assault of a woman when he attempted to escape from the psychiatric ward of Bethesda Naval Hospital. The report also indicated that he had been charged in Maryland with battery and had served a year's probation. Appellant's own memorandum described the context of two prior instances of assaultive behavior towards women committed by appellant. Thus, there was evidence on which the judge could reasonably conclude that appellant had assaulted two women.

■ Second, the judge's reference to the possibility that the complainant could have died as a result of appellant's actions referred to the assault with the automobile

on March 11, 1987. It was within the judge's discretion during sentencing to assess the nature of appellant's conduct and his potential for future assaultive behavior. *See, e.g., Sobin v. District of Columbia*, 494 A.2d 1272, 1275 (D.C.1985).

Third, even if the reliability of the hearsay recited by the prosecutor regarding appellant's alleged unadjudicated bad acts is questionable, *see, e.g., United States v. Weston*, 448 F.2d 626, 633–34 (9th Cir. 1971), remanding for resentencing where defendant denied serious criminal conduct alleged by unidentified law enforcement personnel and anonymous informant) *cert. denied*, 404 U.S. 1061, 92 S.Ct. 748, 30 L.Ed.2d 749 (1972), the judge heard appellant's explanation of these matters and did not purport to rely on them. Appellant denied his role in some of the incidents, and his colloquy with the trial judge makes clear that the judge did not reject appellant's explanation of some matters; rather the judge was principally concerned that appellant's past behavior, as described and admitted by him, and his psychological problems, did not augur well for his relationships with women in the future. Appellant, in addition to explaining his views of these prior incidents, also allocuted, requesting mitigation of his sentence.

■ Furthermore, appellant was represented by counsel, who submitted a lengthy sentencing memorandum on appellant's behalf. Under Super.Ct.Crim.R. 32(b)(3)(A), appellant and his counsel could have requested disclosure of the presentence report prior to sentencing, and counsel also could have asked for a further hearing or continuance if the prosecutor's recitation came as a surprise, *see United States v. Rachels*, 820 F.2d 325, 327 (9th Cir.1987), or requested the judge to make further findings in support of the sentences imposed. Counsel did none of these things, but did make clear to the judge that the defense and government viewed the December 5, 1986, events differently.

Under the circumstances, we cannot conclude that appellant did not have an ade-

quate opportunity to rebut the substance of the prosecutor's recitation.[5]

## V.

Finally, appellant contends that the trial judge abused his discretion in imposing a sentence of seven to twenty-one years for contempt since it "clearly was not intended to preserve the power and vindicate the dignity of the court, or to punish for disobedience to its orders." Noting that the power to punish for contempt was originally unlimited, making possible its arbitrary exercise,[6] appellant maintains, citing *Ex Parte Robinson,* 86 U.S. (19 Wall.) 505, 510–11, 22 L.Ed. 205 (1873), and *Ex Parte Wall,* 107 U.S. 265, 302, 2 S.Ct. 569, 600, 27 L.Ed. 552 (1882), that Congress limited and defined the power of courts so that punishment could only be imposed for certain types of conduct.[7] Accordingly, the use of the trial court's power under § 11–944 must be "carefully watched and exercised with the greatest reluctance and anxiety on the part of judges," argues appellant (citing *Gompers v. United States,* 233 U.S. 604, 610, 34 S.Ct. 693, 695, 58 L.Ed. 1115 (1914)) and "[i]t is improper for the court to impose [a] sentence for contempt where much of the sentence was for some collateral reason." Therefore, appellant asks this court to exercise its "special responsibility" to prevent abuse of the contempt power when the record suggests that the trial judge was not concerned with the dignity and power of the court, but rather wished to incarcerate appellant for as long a period as possible. The government agrees that this court has a "special responsibility for determining that the contempt power is not abused," (citing *Bloom v. Illinois,* 391 U.S. 194, 202, 88 S.Ct. 1477, 1482, 20 L.Ed.2d 522 (1968) (court's "arbitrary power" to sentence for contempt is "liable to abuse"), and *Green v. United States,* 356 U.S. 165, 188, 78 S.Ct. 632, 645, 2 L.Ed.2d 672 (1958) (special duty of appellate courts where Congress has set no limit on sentencing power for contempt)).

Obviously a statute vesting unlimited sentencing power in a trial judge is an awesome circumstance, potentially subject to abuse. As the Supreme Court has stated, trial courts have "a special duty to exercise such an extraordinary power with the utmost sense of responsibility and circumspection." *Green v. United States,* 356 U.S. 165, 188, 78 S.Ct. 632, 645, 2 L.Ed.2d 672 (1958). The variety of conduct that a judge may find to constitute contempt of a court order—from relatively minor infractions to conduct inflicting physical harm—is virtually unlimited, as is the possible sentence. The "special responsibility" of appellate courts where contempt is concerned, particularly contempt for which the sentence is unlimited, arises precisely out of concern that an infraction might result in disproportionate punishment. *See United States v. Leyva,* 513 F.2d 774, 780 (5th Cir.1975) ("shocking" where 35 year contempt sentence for refusal to answer grand jury question greatly exceeded any possible penalty for the underlying narcotics offense). Accordingly, like other courts, we are guided by the principle of proportionality in determining whether or not a sentence for contempt bears a reasonable relationship to the underlying conduct.[8] *See Brown v. United*

---

5. *Weston, supra,* 448 F.2d 626, and *McPhaul, supra,* 452 A.2d 371, on which appellant relies, are readily distinguishable, the former involving anonymous sources for the charges denied by the defendant, and the latter involving the disregard by the sentencing judge of the medical examiner's conclusion that the assault for which the defendant had been convicted and the death of the victim were unconnected. In the instant case, the judge had records of appellant's prior convictions and his admissions regarding prior misconduct involving women.

6. Appellant cites Frankfurter & Landis, *Power to Regulate Contempts,* 37 HARV.L.REV. 1010, 1024 (1923) (unlimited contempt power lends itself to arbitrary exercise).

7. Appellant refers, specifically, to conduct necessary "to insure order and decorum in their presence, to secure faithfulness on the part of their officers in their official transactions and to enforce obedience to their lawful orders, judgments and processes."

8. The principle of proportionality has been applied by the Supreme Court in cases involving the Eighth Amendment. *E.g., Solem v. Helm,* 463 U.S. 277, 286–87, 103 S.Ct. 3001, 3007–08, 77 L.Ed.2d 637 (1983) ("When the Framers of the

*States,* 359 U.S. 41, 52 n. 15, 79 S.Ct. 539, 547 n. 15, 3 L.Ed.2d 609 (1959) (looking to penalties for obstruction of justice to determine proper sentence for contempt violation relating to refusal to answer questions before a grand jury); *Green, supra,* 356 U.S. at 188–89, 78 S.Ct. at 645–46 (comparing sentences given others who refused to surrender to serve sentences); *United States v. Gracia,* 755 F.2d 984, 990 (2d Cir.1985) (principle of proportionality employed to reduce nine year sentence for contempt for refusal to testify to four years in view of five year maximum sentence for perjury); [9] *United States v. Restor,* 679 F.2d 338, 340–41 (3d Cir.1982) (per curiam) (reasonable relationship test applied); [10] *United States v. Gomez,* 553 F.2d 958, 959 (5th Cir.1977) (reducing contempt sentence partially to preserve proportionality with maximum sentences for perjury or obstruction of an investigation); *United States v. Leyva, supra,* 513 F.2d at 780 (same). *Cf. Bruce v. United States,* 471 A.2d 1005, 1007 (D.C.1984) (acknowledging the principle of proportionality of punishment in holding that possession of a weapon for eight hours over two days was a single offense under D.C.Code § 22–3204).

■ The order that appellant violated was designed both to ensure the efficient and decorous functioning of the court and the safety of a citizen who had sought the court's protection. Appellant maintains that the trial judge did not refer during

sentencing to his concern about the dignity of the court or the violation of the condition of pretrial release, but instead focused on the likelihood of appellant's future assaultive behavior. The government responds that the judge imposed a reasonable sentence that took into consideration both the dangerousness involved in appellant's violation of the pretrial order and evidence that his prior behavior offered little assurance that he would not be a danger were he placed on probation as his counsel suggested. Given the dual purpose of the order, we are not prepared to say that it was inappropriate for the trial judge to consider the danger presented to the complainant by appellant's disobedience of his pretrial release order. The record makes clear that the judge was concerned that appellant had violated an order to stay away from the complainant and that his failure to do so had put her in jeopardy, and he was not required to accept appellant's explanation that in driving his car he intended only to frighten her. Still, the question before the judge was the appropriate sanction to be imposed on appellant for disobedience of the order, not for the underlying offense, for which appellant had received a separate sentence.

■ In exercising such discretionary authority, the trial court's power is never entirely unlimited. Even where it is clear that the judge recognizes that he or she

Eighth Amendment adopted the language of the English Bill of Rights, they also adopted the English principal of proportionality. * * * * The constitutional principle of proportionality has been recognized explicitly in this court for almost a century.") (footnotes omitted). The factors recognized by the Supreme Court in determining the proportionality of a sentence are (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other defendants for the same offense in the same jurisdiction; (3) the sentences for the same offense imposed in other jurisdictions for similar offenses, comparisons with sentences imposed on similarly situated defendants convicted of the same offense, and comparisons with sentences for the same offense in different jurisdictions."). *Id.* at 291–92, 103 S.Ct. at 3010–11.

9. In *Gracia,* the Second Circuit Court of Appeals noted that the principle of proportionality is

"deeply rooted ... in common law jurisprudence." 755 F.2d at 989 (quoting *Solem v. Helm, supra,* and noting that the factors set forth by Justice Powell in *Solem v. Helm* are applicable, although not exclusive in reviewing sentences for contempt).

10. The court in *Restor,* while deferential to the trial court, nevertheless noted that although a suspended sentence of six months imprisonment for violation of a temporary restraining order by federal air traffic controllers "was not excessively harsh," *id.* at 340, it viewed the sentence to be "a harsher sentence than most, if not all, other striking air traffic controllers received," and indicated that the trial court was expected to reconsider upon remand (required for other reasons) whether, in view of subsequent events, the sentences were greater than necessary. *Id.* at 341.

has discretion to exercise and does so, the trial judge must consider the appropriate factors in exercising discretion and the judge's ultimate order must fall within permissible alternatives. *See generally Johnson v. United States,* 398 A.2d 354, 365 (D.C.1979) (nature of trial court discretion). Further, the trial judge must provide a record sufficient to permit appellate review for a determination of whether discretion in imposing the contempt sentence has been abused. *Id.* This court looks for "indicia of rationality and fairness that will assure ... that the trial court's action was proper." *Id.* at 362. In these respects the trial judge's imposition of appellant's sentence for contempt is flawed.

First, we recognize, as stated by the Second Circuit, that

> The general principle of proportionality applicable in contempt cases calls for the elimination of certain kinds of gross disparity among sentences imposed on comparably situated defendants, but it does not require that all such sentences be automatically reduced to the level of least severity.

*Gracia, supra,* 755 F.2d at 990. Still, it is rather striking that the Second Circuit could write in 1985 that "no court of appeals has ever affirmed a criminal contempt sentence in excess of five years." *Gracia, supra,* 755 F.2d at 990 (decided February 14, 1985). Ten years earlier the Fifth Circuit had noted that over half of the states had limited imprisonment for criminal contempt to one year or less. *Leyva, supra,* 513 F.2d at 780 (citing *Bloom v. Illinois,* 391 U.S. 194, 206–07 n. 8, 88 S.Ct. 1477, 1484–85 n. 8, 20 L.Ed.2d 522 (1968)). Nor under the principle of proportionality do the cases relied on by the government appear to be the appropriate comparable sentences.[11]

Second, the trial judge gave no reason for imposing a sentence in excess of the maximum sentence for the underlying conduct constituting the contemptuous act. *See United States v. Wilson,* 421 U.S. 309, 319, 95 S.Ct. 1802, 1808, 44 L.Ed.2d 186 (1975) ("least possible power adequate to

---

**11.** The government refers us to *In re Tinney,* 518 A.2d 1009, 1010 (D.C.1986) (30 months for refusing to testify at trial after testifying before grand jury); *United States v. Ray,* 683 F.2d 1116, 1122–23 (7th Cir.1982), (3 years for failing on several occasions to provide handwriting exemplars and then providing distorted ones after government had independently identified signers of documents; court noted extraordinary behavior of the defendant and other criminal contempt sentences, distinguishing a six-month sentence for failure to provide additional handwriting examples as occurring in summary contempt proceeding) *cert. denied,* 459 U.S. 1091, 103 S.Ct. 578, 74 L.Ed.2d 938 (1982); *United States v. Berardelli,* 565 F.2d 24, 30–31 (2d Cir. 1977) (5 years for refusing to testify after being granted immunity regarding loansharking activities, "in particularly flagrant case of contempt," where, prior to sentencing on other charges, the defendant had agreed to cooperate with the government) (quoting trial judge, who "outlined at length the reasons for his decision"); *United States v. Sternman,* 433 F.2d 913 (6th Cir.1970) (per curiam) (3 years for refusing to testify with immunity before grand jury; court declined to apply misdemeanor penalty for violations of Federal Communications Act as sentencing standard). In all of these cases the defendant was interfering with the ability of the courts to proceed in the administration of justice.

Cases involving criminal contempt for violation of an order to stay away from a spouse, however, suggest a very different level of punishment. *See, e.g., People v. Gray,* 69 Ill.2d 44, 45, 12 Ill.Dec. 886, 887, 370 N.E.2d 797, 798 (1977), (six months for criminal contempt for violation of protective order, by striking his wife with a gun and then shooting her, in divorce proceeding enjoining Gray from striking or molesting his wife) *cert. denied,* .435 U.S. 1013, 98 S.Ct. 1887, 56 L.Ed.2d 395 (1978); *Commonwealth v. Allen,* 322 Pa.Super. 424, 426, 469 A.2d 1063, 1065 (1983), *aff'd in part, rev'd in part,* 506 Pa. 500, 486 A.2d 363 (1984), *cert. denied,* 474 U.S. 842, 106 S.Ct. 128, 88 L.Ed.2d 105 (1985) ($750 fine for contempt for violation of orders enjoining defendant from physically abusing, striking or harassing his wife and minor children, and defendant found guilty of entering wife's residence and hitting her). Cases in the District of Columbia appear to be similar. *Cf. Foster v. United States,* No. 89–449 (appeal pending in this court) (for violation of civil protection order as to wife and mother-in-law, defendant sentenced to total of 600 days (150 days consecutive on four counts) for assault, three counts of threats and assault with intent to kill). (In companion case, *United States v. Dixon,* 117 D.W.L.R. 9 (1989), defendant sentenced under § 11–944 to 150 days for violation of pretrial release order for second degree murder not to commit any criminal offense—possession of cocaine with intent to distribute).

the end proposed, should be used in contempt cases") (citations omitted). He considered the gravity of the conduct and the possibility of consecutive sentences for the underlying conduct and the contempt, but his analysis stopped after that. There is no indication that the trial judge gave any consideration to the principle of proportionality. Although the trial judge did not impose the longest sentence that he might have imposed,[12] appellant's sentence on its face is, at best, at the outer limits of what would be proportionate and reasonable. Adding four to twelve years to a person's sentence over and above that imposed for the underlying contemptuous conduct seems extraordinary under most circumstances. A substantially less severe sentence would appear adequate to vindicate the authority of the court. See Leyva, supra, 513 F.2d at 780 (reducing contempt sentence to two years where trial judge, out of concern about the drug problem and associated law enforcement problems, imposed 35 year sentence).

The government, in urging that the contempt sentence was reasonable, relies on the decision of the Second Circuit Court of Appeals affirming a ten-year consecutive sentence for criminal contempt where the defendant violated an order to stay away from the family of a government witness (informant) by contacting the witness' sister-in-law, beating her in the face with a screwdriver, and threatening her and other members of their family. United States v. DiPaoli, 804 F.2d 225, 234 (2d Cir.1986).[13] The circumstances of repeated threats and intimidation to the witness, her sister-in-law and her family in DiPaoli are clearly

more extreme than in the instant case, however, causing the two women to place themselves and their children in protective custody, among other things. See id. at 229. In any event, one case hardly makes for comparability under the principle of proportionality. Gracia, supra, 755 F.2d at 889 (court should consider the range of sentences imposed in similar cases). Moreover, even in DiPaoli, the contempt sentence did not exceed the sentence imposed for the underlying conduct. While the fundamental concerns arising from the violation of the stay-away order may be similar in DiPaoli and the instant case, a review of other contempt sentences makes clear that, consistent with our "special responsibility," the contempt sentence imposed on appellant was an abuse of discretion by the trial judge.

In sentencing appellant for contempt, the only question before the judge was what sentence was necessary to vindicate the authority of the court. As noted, supra note 11, the sentences imposed for violation of a stay-away order are far less severe than imposed here. The judge imposed a sentence of seven to twenty-one years for the contempt. This exceeded in substantial measure not only sentences in other stay-away contempts, but also the three to nine year sentences that appellant received for the assault with the automobile, the act underlying the finding of contempt, and assault with a stick. The judge gave no indication that such a sentence was required to vindicate the authority of the court, much less what made this case unlike other cases in which stay-away orders have been violated.[14] See Gracia, supra,

12. The judge commented, after imposing sentence, that appellant might be released in seven years as a result of good time. In its brief, the government states that the contempt sentence adds four to twelve years to the concurrent term of incarceration for the assault with a dangerous weapon.

13. In addition to a $25,000 fine, DiPaoli was sentenced to (1) 5 years' imprisonment for conspiracy to intimidate witnesses; (2) 5, 10 and 10 years on three counts regarding acts of intimidation (the ten-year sentences concurrent to each other but consecutive to the sentences on the other counts); and (3) 10 years (consecutive

to the substantive counts involving the sister-in-law) for criminal contempt under 18 U.S.C. § 401. The underlying offense relating to the conspiracy involved the hijacking and robbery of a Postal Service contract carrier of $221,000 in blank American Express travelers checks. 804 F.2d at 227.

14. A comparison with another criminal contempt sentence for violation of a pretrial release order by the same trial judge suggests the severity of the sentence imposed. In Dixon, supra, 117 Daily Wash.L.Rptr. at 12, Judge Walton imposed a six-months' sentence for violation of two pretrial release orders not to commit a

755 F.2d at 990 (sentence reduced to four years as consistent with deep concern for consequences of contempt, deterrence, and extent of defiance of order); *United Mine Workers of America, Inc., supra,* 330 U.S. at 303, 67 S.Ct. at 701 (same listing of relevant factors, plus public interest). Such findings are obviously desirable for sentences under D.C.Code § 11–944 since the trial judge does not have unbridled sentencing discretion. *See Green, supra,* 356 U.S. at 188, 78 S.Ct. at 645; *United States v. Berardelli, supra* note 11, 565 F.2d at 30 (noting with approval that trial judge "outlined at length" the basis for his decision before sentencing defendant for contempt); *Johnson, supra,* 398 A.2d at 364 ("requirement that the decision-maker compile a record makes certain that the facts of the case do not escape his attention and makes it more probable that the decision-maker will exercise his [or her] discretion in a proper manner").

Accordingly, we deem it appropriate here to remand the case to the trial court for resentencing on the contempt charge in such a manner as the trial court thinks "just and fair" upon consideration of the factors associated with the proportionality principle.[15]

*Remanded.*

---

criminal offense, where he found that the defendant, while on release on a second degree murder charge, was distributing cocaine.

**15.** Appellate courts do not always remand for resentencing. The Supreme Court, in addition to remanding cases for resentencing, *Yates v. United States,* 355 U.S. 66, 76, 78 S.Ct. 128, 134, 2 L.Ed.2d 95 (1957) (remand for resentencing in light of court's conclusion that defendant had committed only one contempt, and not eleven separate ones, for refusing to answer eleven questions); *Nilva v. United States,* 352 U.S. 385, 396, 77 S.Ct. 431, 438, 1 L.Ed.2d 415 (1957) (remand for resentencing where only one of three underlying convictions sustained), has also reduced criminal contempt sentences itself. *United States v. United Mine Workers of Am.,*

330 U.S. 258, 305, 67 S.Ct. 677, 702, 91 L.Ed. 884 (1947) (reducing fine levied against labor union for violation of injunction and restraining order). *See also Gracia, supra,* 755 F.2d at 989 (exercising power under *Green* to revise excessive contempt sentences); *Gomez, supra,* 553 F.2d at 959 (reducing sentence for contempt for refusing to testify from 15 to 2 years); *Leyva, supra,* 513 F.2d at 780 (reducing 35 year contempt sentence to two years consecutive to state sentence being served). We will, naturally, address each case on an individual basis.

