**Anthony SEALS, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 03–CO–51.**

District of Columbia Court of Appeals.

Argued Feb. 11, 2004.

Decided March 11, 2004.

Dennis Galarowicz, Washington, DC, for appellant.

---

Eric P. Gallun, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney, and John R. Fisher and Barbara J. Valliere, Assistant United States Attorneys, were on the brief, for appellee.

Before FARRELL and WASHINGTON, Associate Judges, and PRYOR, Senior Judge.

FARRELL, Associate Judge:

Appellant pleaded guilty to misdemeanor receipt of stolen property (RSP), D.C.Code § 22–3232(a) & (c)(2) (2001), and criminal contempt, *id.* § 11–944(a) (2001). He was sentenced to consecutive prison terms of 150 days for RSP and thirty-six months for contempt. On appeal, citing *Caldwell v. United States,* 595 A.2d 961 (D.C.1991), he argues that the contempt sentence violates principles of proportionality applicable to a sentence under that statute vesting almost "unlimited sentencing power in a trial judge," *id.* at 968, and that the trial judge failed adequately to explain the three-year sentence. *See id.* at 970 ("[T]he trial judge must provide a record sufficient to permit appellate review for a determination of whether discretion in imposing the contempt sentence has been abused."). Although the sentence for contempt was, in the circumstances of this case, at the outer bounds of a permissible sentence for violation of a statute "designed to serve the limited purpose of vindicating the authority of the court," *Young v. United States ex rel. Vuitton et Fils S.A,* 481 U.S. 787, 800, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987), it did not exceed those bounds and we therefore affirm.

I.

Appellant was arrested while in possession of a Dell computer, a Dell keyboard, a blue backpack, and a green pullover bearing the company logo "Away.com." These items had been stolen shortly before from a company of that name located at 702 H Street, N.W., approximately a block from where appellant was arrested. A judicial officer placed appellant on work release in the custody of a halfway house (or "extended house facility") on the standard condition that he commit no crimes, but also on the special condition that he stay away from a five-block radius of Sixth and H Streets, N.W. except as required for legal proceedings. A charge of escape was subsequently filed against him based on his alleged elopement from the facility for somewhat over two weeks. Further, he was arrested approximately fifteen weeks after his release while standing at a bus stop in the 400 block of H Street, N.W., by a police officer who recognized him as the subject of the stay away order.

Appellant entered a plea of guilty on October 23, 2002, to misdemeanor RSP and criminal contempt for violation of the stay away order. The original RSP complaint, which charged a felony, and the escape charge were dismissed. During the plea proceedings, the trial court judge elicited from appellant his understanding (among other things) that there was no statutory maximum sentence for the contempt charged. At sentencing on December 13, 2002, the judge had before him a presentence report regarding appellant. It revealed a history of arrests and, to a lesser extent, convictions that in the report writer's opinion showed "a clear pattern of an offender [who] commits burglaries and

thefts as his … means of supporting himself." Commenting on the record, the prosecutor described it as "span[ning] many, many years, and different jurisdictions." The judge took note of the report writer's count of "31 arrests, a number of convictions," and concluded that appellant—who was born in Guyana and was "in this country illegally apparently"—had "been simply surviving by committing crimes [while here]" at least since 1990. After permitting appellant to allocute, the judge sentenced him to 150 days' imprisonment for RSP and thirty-six months for contempt, followed by three years of supervised release.

## II.

■■■ Appellant's primary argument on appeal is that the sentence for contempt "was out of proportion to the contemptuous conduct of standing at a bus stop in the [C]hinatown area of Washington, D.C." (Br. for App. at 1). He relies on this court's holding in *Caldwell, supra,* that because "[t]he variety of conduct that a judge may find to constitute contempt of a court order [under § 11–944]—from relatively minor infractions to conduct inflicting physical harm—is virtually unlimited, as is the possible sentence[,][1] … we are guided by the principle of proportionality in determining whether or not a sentence for contempt bears a reasonable relationship to the underlying conduct." *Caldwell,* 595 A.2d at 968.

The underlying conduct at issue here, of course, is not merely appellant's "standing at a bus stop." He was found there in violation of a court order that, in addition to directing him to commit no crimes on release, deemed it necessary to forbid his presence in a circumscribed area as a prophylaxis against his committing further property offenses before trial.[2] The trial judge knew, moreover, that appellant had been charged with escape from the halfway house while on release.[3] The judge therefore had before him two instances in the case itself where appellant had disobeyed the authority of the court. *See United States v. United Mine Workers of Am.,* 330 U.S. 258, 303, 67 S.Ct. 677, 91 L.Ed. 884 (1947) (one justification for contempt is to "effectively terminat[e] the defendant's defiance [of the court's orders] as required by the public interest"). But of equal if not greater importance, the judge had before him a lengthy record of appellant's arrests and some convictions for crimes committed in apparent unbroken succession (five in 1995 alone and four in 2001 alone), including several "Bail Reform Act" felonies and misdemeanors that by definition involved willful disregard of court orders. Even recognizing, as we do, that "[i]n sentencing [a defendant] for contempt, the only question before the judge [is] what sentence [is] necessary to vindicate the authority of the court," *Caldwell,* 595 A.2d at 971, appellant's present and past conduct portrayed a fairly compelling case of need for a sizeable sentence to punish his pattern of disregarding such orders.

Furthermore, *Caldwell* did not cast doubt on the authority of the court in

---

1. Under D.C.Code § 11–944, "[t]here is no [statutory] limitation on the length of the sentence for criminal contempt." *Caldwell,* 595 A.2d at 965.

2. Appellant has not challenged, nor could he reasonably, the validity of this interim restriction on his right to move about freely.

3. Appellant does not dispute the trial court's authority in general to consider charged but unproven criminal conduct in imposing sentence. *See United States v. Tucker,* 404 U.S. 443, 446–47, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); *Williams v. New York,* 337 U.S. 241, 246, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949).

sentencing for contempt—as for any other crime—to consider characteristics of both the offense *and* the offender, specifically evidence of past dangerousness and the consequent need for deterrence. The defendant in *Caldwell* had been convicted of both contempt and assaults based on the same underlying conduct. In rejecting his separate argument that the trial judge had improperly relied on prior unadjudicated assaults in sentencing him, this court did not differentiate between contempt and other crimes in reaffirming the judge's discretion to consider a broad variety of reliable evidence in imposing sentence. *See id.* at 966–67 (citing cases). And in later addressing the proportionality of the defendant's contempt sentence, the court did not disagree with the government's contention that a reasonable sentence could take into account "both the dangerousness involved in appellant's violation of the pretrial order and evidence that his prior behavior offered little assurance that he would not [again] be a danger," particularly to the complainant whom he had assaulted despite a stay away order, if he were placed on probation. *Id.* at 969. *See also, e.g., United States v. Gomez,* 553 F.2d 958, 959 (5th Cir.1977) (in sentencing for contempt judge should consider, among other things, "mitigating and aggravating factors" and "the rehabilitation of the offender"); *United States v. Gracia,* 755 F.2d 984, 990 (2d Cir.1985) (in reducing contempt sentence from nine to four years, court of appeals pointed out, *inter alia,* that "nothing in [the defendant's] offense or background merits [the greater] punishment"). Our *Caldwell* decision, in short, did not intend to make of contempt a unique departure from the rule that the judge may look at the offender—*i.e.,* his personal history—as well as the offense in

deciding upon a sentence necessary to fulfill the aims of punishment.

In this case, appellant's record in the aggregate depicted a person who, as the trial judge explained, appeared to live "simply ... by committing crimes" and whom, therefore, a brief prison term for contempt even coupled with the sentence for misdemeanor RSP would not reasonably—in the judge's perception—be expected to deter from continuing that behavior. Proportionality analysis did not require the judge to ignore this danger of recidivism and the need to deter it even though, in principle, contempt proceedings "are not intended to punish conduct proscribed as harmful by the general criminal laws." *Young v. U.S. ex rel. Vuitton,* 481 U.S. at 800, 107 S.Ct. 2124. We accordingly sustain the three-year sentence as a lawful exercise of the judge's authority to punish for criminal contempt.[4] In contrast to this case, the prison sentence invalidated as excessive in *Caldwell* was for seven to twenty-one years, adding as much as twelve years to the sentence the judge imposed for the underlying assaultive conduct that violated the release condition. *See* 595 A.2d at 971. In concluding that "[a] substantially less severe sentence would appear adequate to vindicate the authority of the court," we cited as illustrative a case in which an appellate court had reduced to *two* years a greater contempt sentence imposed in part to deter drug trafficking. *See id.* at 971 (citing *United States v. Leyva,* 513 F.2d 774, 780 (5th Cir.1975)). Appellant does not seriously argue that the judge was limited to a sentence at or very near the 150 days he imposed for RSP. (The government points out in this regard that appellant had been

---

**4.** Appellant's suggestion that the maximum allowable penalty for contempt based on violation of a condition of release is prescribed by D.C.Code § 23–1329(c) (2001) was rejected by *Caldwell. See* 595 A.2d at 965–66.

arrested for *felony* RSP and that, but for his guilty plea before indictment, his possible exposure would have been up to seven years in prison for the receipt of stolen property. *See* D.C.Code § 22–3232(c)(1)). Where exactly between, say, one year and thirty-six months the "right" proportionate contempt sentence lay for a person who had offended repeatedly against both the criminal laws and court orders is probably impossible to say. The trial judge's choice here was not wholly incommensurate with appellant's offense and offender characteristics,[5] and thus we will not disturb it.

We nevertheless call attention once more to the implied teaching of *Caldwell,* which—in the vernacular—is that a sentence for contempt should never be the tail that wags the dog of punishment for a violation of the general criminal laws. The danger that contempt for defying a court order is used to compensate for limits on the available punishment in sentencing for a related crime was avoided here, but not by much. So too, *Caldwell* tells us that "the trial judge must provide a record sufficient to permit appellate review" of contempt sentences unlimited by a statutory maximum, 595 A.2d at 970, and the judge's explanation for a more than sixfold multiplier here as between the contempt and RSP sentences was sketchy at best. But the record of appellant's habitual offenses and disobedience of court orders was before the trial judge, and the necessity he drew from it for a substantial prison sentence to deter further such conduct is plain enough that a remand for

additional explanation would serve no reasonable purpose.

Accordingly, the judgment of conviction is

*Affirmed.*

---

**5.** Certainly if appellant had had *no* criminal record, the fact would have been relevant to deciding the appropriate sentence for contempt, including the need for special deterrence. *See Gracia, supra; United States v. Roach,* 323 U.S.App. D.C. 448, 456, 108 F.3d 1477, 1485 (1997) (in ordering reduction of contempt sentence for violation of court order

prohibiting retaliation against employees, court of appeals directs district court to consider, *inter alia,* that contemnor had "enjoyed an otherwise exemplary career" working for employer). No more was the judge required to close his eyes to appellant's record of property offenses.