*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-FS-645

IN RE Q.B.; DISTRICT OF COLUMBIA, APPELLANT,

Appeal from the Superior Court
of the District of Columbia
(DEL-669-14)

(Hon. Danya A. Dayson, Trial Judge)

(Argued November 18, 2014                    Decided June 11, 2015)

*Janice Y. Sheppard*, Assistant Attorney General, Office of Attorney General, with whom *Irvin B. Nathan*, Attorney General for the District of Columbia at the time the briefs were filed, *Todd S. Kim*, Solicitor General, and *Rosalyn C. Groce*, Deputy Solicitor General, were on the brief, for appellant.

*Shilpa S. Satoskar*, Public Defender Service, with whom *James Klein* and *Jaclyn S. Frankfurt*, Public Defender Service, were on the brief, for appellee.

Before THOMPSON and BECKWITH, *Associate Judges*, and STEADMAN, *Senior Judge*.

BECKWITH, *Associate Judge*: The District of Columbia appeals from the trial court's dismissal of a delinquency petition charging seventeen-year-old Q.B. with contempt under D.C. Code § 11-944 (2012 Repl.) for violating a 7 p.m. curfew that was one of several conditions of his pretrial release. Applying this court's decision in *In re (Anthony) Jones*, 51 A.3d 1290 (D.C. 2012), the trial court ruled that the pretrial release order contained no "free-standing requirement" to

obey the conditions of release and that the petition did not charge an offense under the contempt statute. We agree, and we affirm the court's dismissal of Q.B.'s contempt charge.

## I.

On February 10, 2014, the government filed a delinquency petition charging Q.B. with unlawful entry in violation of D.C. Code § 22-3302 (2012 Repl.). The trial court determined that pretrial detention was necessary "to protect the respondent's own person" and "to secure the respondent's presence at the next court hearing." On defense counsel's motion, Q.B. was released from detention the following week subject to several conditions. These conditions included obeying all D.C. laws, ordinances, and regulations; residing with and remaining in the custody and under the supervision of his mother; observing a 7 p.m. curfew unless with a parent or guardian or engaged "in a structured activity"; attending school regularly and obeying all school rules and carrying his attendance card; refraining from use of illegal drugs, subject to "spot testing" at his probation officer's discretion; staying away from a particular address in Northwest D.C.; complying with "all reasonable referrals from Court Social Services"; not being rearrested; and engaging in mentoring and tutoring services. Q.B. signed the release order beneath a paragraph stating,

> The above checked Conditions of Release have been explained to me and I agree to comply with them to the best of my ability. I understand that failure to comply with any of these conditions noted may result in my placement in a secured or unsecured facility until final disposition of my case.

The case was set for trial on April 15, 2014.

At 10 p.m. on April 8, 2014, Metropolitan Police Department Officer Justin Lyons responded to a complaint about "a group of individuals smoking and drinking" and found Q.B. standing in an alley with several other people.[1] The next day Officer Lyons learned that Q.B. had been in apparent violation of a 7 p.m. curfew under the pretrial release order. He applied for a custody order, and Q.B. was arrested on April 10.

The government filed a second petition against Q.B. on April 11 charging him with contempt under D.C. Code § 11-944 (a)(2). Four days later, the court dismissed Q.B.'s unlawful entry charge for want of prosecution.

Q.B. then filed three motions: a motion to dismiss the contempt petition for failure to charge an offense, a motion to dismiss the petition for vindictive prosecution in retaliation for asserting his right to trial on the unlawful entry

---

[1] Officer Lyons said he smelled burning marijuana when he entered the alley. At least two individuals then "split," and a search of the three people remaining, including Q.B., yielded no drugs. The police made no arrests.

charge, and a motion to compel discovery for a selective prosecution claim. On April 28, 2014, the trial court granted the motion to dismiss for failure to charge an offense and denied the other two motions as moot. The government timely appealed.

## II.

The government argues at the outset that the trial court lacked the authority to dismiss the petition for failure to charge an offense before holding a factfinding hearing. In its view, family court judges can dismiss delinquency petitions only pursuant to statutory authority,[2] and no statute provides authority to dismiss a delinquency petition in this circumstance.[3]

Q.B. argues that the government waived this claim by failing to press it before the trial court. Even if the government preserved the claim for appeal,

---

[2] *See, e.g.*, *In re D.M.*, 47 A.3d 539, 556 (D.C. 2012) (vacating order granting motion to dismiss because trial court lacked statutory authority to dismiss petition for "social reasons" after adjudication).

[3] The government cites four statutory provisions that provide authority to dismiss a delinquency petition in other circumstances not present here: D.C. Code § 16-2317 (b)(1) (allegations not proven beyond a reasonable doubt after a factfinding hearing); § 16-2317 (d) (determination at or after dispositional hearing that child is not in need of care and rehabilitation); § 16-2324 (a) (court can set aside orders obtained by fraud or mistake, or for which the court lacked jurisdiction, or when newly discovered evidence so requires); § 16-2303 (court may terminate jurisdiction if the minor is convicted of another crime as an adult).

however, we disagree that the trial court lacked authority for its action. Juvenile Court Rule 12 provides that "any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion and in accordance with Rule 47-I." Super. Ct. Juv. R. 12 (b). Specifically, this includes "[d]efenses and objections based on defects in the petition," including a failure to charge an offense.[4] Super. Ct. Juv. R. 12 (b)(2). Rule 41-I further provides that "[a] motion made before the factfinding hearing shall be determined before the factfinding hearing unless the assigned judge . . . orders that it shall be deferred for determination at the factfinding hearing." Super. Ct. Juv. R. 47-I (d); *see* D.C. Code § 16-2317 (a) (2012 Repl.) ("Except as otherwise provided by statute or court rule, all motions shall be heard at the time of the factfinding hearing."). The government did not mention these rules in its opening brief, and in its reply brief and at oral argument appeared no longer to be pressing its broad claim that the trial court's authority to dismiss a juvenile delinquency petition prior to a factfinding hearing was limited to situations in which a statute expressly authorizes dismissal. And with good reason. The trial court undoubtedly has the power to dismiss a delinquency petition pursuant to the Juvenile Court Rules. *See,*

---

[4] And unlike most objections based on defects in the petition, a motion to dismiss for failure to charge an offense may be raised "any time during the pendency of the proceedings." Super. Ct. Juv. R. 12 (b)(2).

*e.g.*, *District of Columbia v. D.E.P.*, 311 A.2d 831, 832 (D.C. 1973); *Campbell v. United States*, 295 A.2d 498, 501 (D.C. 1972) ("[T]he Superior Court's rules[,] at least when they are substantially identical to federal rules, have the force and effect of law."). In this case, these rules authorized the trial court to do just what it did— dismiss a petition for failure to charge an offense before holding a factfinding hearing.

The government also contends that the trial court erred by looking "beyond the face of the petition" when determining that the petition in this case did not charge an offense. In the government's view, the petition adequately charged an offense by alleging that Q.B. "willfully disobeyed" a court order "directing him to comply with a 7 p.m. curfew," and the trial court should not have considered the language of the release order itself.

We disagree. To evaluate the sufficiency of the petition, as with an indictment, the trial judge had to determine "whether the facts alleged [were] sufficient in law . . . to support a conviction." *Russell v. United States*, 369 U.S. 749, 768 n.15 (1962). To do so here, the court had to ascertain whether the underlying court order contained a curfew requirement that subjected Q.B. to a contempt charge. *Cf. United States v. Dixon*, 509 U.S. 688, 698 ("[T]he 'crime' of violating a condition of release cannot be abstracted from the 'element' of the violated condition."). This was a purely legal analysis and the question was thus

"capable of determination without the trial of the general issue." Super. Ct. Juv. R. 12 (b). We see no procedural impropriety in the trial court's dismissal of the petition prior to a factfinding hearing.

## III.

As to the merits of the trial court's ruling, the government argues that, contrary to the trial court's view, the petition in this case validly charged an offense under the general contempt statute, D.C. Code § 11-944, by alleging that Q.B. violated a condition of release in his pretrial release order. Q.B. argues, and the trial court ruled, that this court's holding in *In re (Anthony) Jones*, 51 A.3d 1290 (D.C. 2012), precludes the government from charging him with contempt.

In *(Anthony) Jones*, Anthony Jones was subject to a civil protection order (CPO) stating that he "may have unsupervised visitation with the parties' minor children so long as [he] does not use illegal drugs." 51 A.3d at 1291. After Mr. Jones was accused of using illegal substances and failing to report for a scheduled drug test, he was convicted of contempt under D.C. Code § 16-1005 (g), which makes it a misdemeanor to violate a CPO. This court reversed his contempt conviction because the CPO contained "no free-standing requirement that he abstain from drug use under pain of criminal contempt," but instead "only required appellant to abstain from the use of illegal substances as a condition of his

continued right to visit with his child." 51 A.3d at 1292-93. Had the trial court intended contempt—"rather than or in addition to withdrawal of unsupervised visitation—to be a sanction for drug use, it surely would have known how to draft that order." *Id.* at 1293.

Here, Q.B. was subject to an order stating that "the Division finds the Respondent should be RELEASED ON THE FOLLOWING CONDITIONS: . . . Observe the following curfew by being in at: 7:00 PM (S, M, T, W, TH, F) and at 7:00 PM (FRI and SAT.) UNLESS WITH PARENT/GUARDIAN OR IN A STRUCTURED ACTIVITY." Q.B. signed the order to affirm his understanding "that failure to comply with any of these conditions noted may result in [his] placement in a secured or unsecured facility until final disposition of [his] case."

The government contends that this order "contained a 'free-standing requirement' that Q.B. 'be in at 7:00 PM' every day of the week." But just as the order in (*Anthony*) *Jones* "only required appellant to abstain from the use of illegal substances as a condition of his continued right to visit with his child," 51 A.3d. at 1292, the order here required Q.B. to obey a curfew only "as a condition of his continued right to" pretrial release. Without a "free-standing requirement" that Q.B. obey a curfew, Q.B. cannot be said to have "disobe[yed] a court order," an element of criminal contempt. *Payne v. United States*, 932 A.2d 1095, 1099 (D.C. 2007) (citation omitted); *cf.* (*Derrick*) *Jones v. United States*, 560 A.2d 513, 516-

17 (D.C. 1989) (holding that "[w]hen a probationer violates a condition of his probation, the only appropriate sanction is a withdrawal of the previously afforded favorable treatment rather than the imposition of an additional penalty" and that because "[p]unishment for contempt is an additional and separate penalty," the use of contempt power in such circumstances "is inappropriate").

At oral argument, the government granted that (*Anthony*) *Jones* might control here if the release order specifically stated that Q.B. was entitled to release "as long as" he obeyed a curfew. Yet we find no meaningful difference between that language and the language in the actual order. The order indicates that Q.B. was released pursuant to an agreement that he obey certain conditions, but Q.B. was never subject to a free-standing order to obey such conditions under pain of contempt. Accordingly, under (*Anthony*) *Jones*, the trial court properly dismissed the delinquency petition for failure to charge an offense under D.C. Code § 11-944 (a).

The government also argues that Q.B.'s challenge must fail because this court has on several occasions affirmed contempt convictions under D.C. Code § 11-944 for violations of pretrial release conditions. It highlights two cases in particular: *Caldwell v. United States*, 595 A.2d 961 (D.C. 1991), and *Vest v. United States*, 834 A.2d 908 (D.C. 2003). In *Caldwell*, the government indicted Mr. Caldwell under D.C. Code § 11-944 (a) for violating conditions of release to

stay away from his girlfriend and to refrain from criminal conduct. *Id.* at 963. Mr. Caldwell pleaded guilty to contempt and was sentenced to seven to twenty-one years in prison. *Id.* On appeal, Mr. Caldwell argued that his sentence was unlawful because it exceeded the six-month maximum penalty under D.C. Code § 23-1329 (c), which specifically authorizes criminal contempt sanctions for violating the conditions of a pretrial release order. *Id.* at 965. The court disagreed and held that "[w]hen two statutes allow different penalties for the same act, the prosecutor has discretion in selecting which of the two statutes to apply." *Id.* We further stated that "§ 11-944 operates independently of and in addition to § 23-1329 (c)" and that § 11-944 "clearly allows a court to punish for disobedience of its order, including a pretrial release order." *Id.* at 966.

In *Vest v. United States*, Mr. Vest argued on appeal from his guilty plea that the indictment in his case failed to state an offense for contempt under § 11-944 for violating a condition of pretrial release. 834 A.2d at 909-10. Specifically, he argued that a magistrate judge was not authorized to set conditions of pretrial release, so violating the magistrate's conditions was not punishable as contempt under § 11-944—an argument we rejected. *Id.* at 909. Mr. Vest also argued that because the release order was issued by a magistrate judge, he could have been charged under § 23-1329 but not § 11-944, as the latter is limited to "judicial officers." The court disagreed and reaffirmed *Caldwell*'s conclusion that the

existence of § 23-1329 does not preclude the government from charging contempt under § 11-944. *Id.* at 910.

While the government argues that *Caldwell* and *Vest* preclude Q.B.'s challenge here, "*stare decisis* is never properly invoked unless in the decision put forward as precedent the judicial mind has been applied to and passed upon the precise question." *United States v. Debruhl*, 38 A.3d 293, 298 (D.C. 2012) (quoting *Murphy v. McCloud*, 650 A.2d 202, 205 (D.C. 1994)). "[Q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Id.* (quoting *Murphy*, 650 A.2d at 205); *see also Hammond v. United States*, 77 A.3d 964, 968 (D.C. 2013) (quoting *Murphy*, 650 A.2d at 205) ("A point of law merely assumed in the opinion, not discussed, is not authoritative."); *Hobson v. District of Columbia*, 686 A.2d 194, 198 (D.C. 1996) (citing *District of Columbia v. Sierra Club*, 670 A.2d 354, 360 (D.C. 1996) (noting that an earlier case was not binding authority when an argument was not raised and the opinion contained "no analysis . . . relevant to that question")).

That we have affirmed a conviction under a particular statute in the past does not foreclose subsequent parties from bringing legal challenges that could have been, but were not, raised in an earlier case. In *Alfaro v. United States*, 859 A.2d

149 (D.C. 2004), for example, the appellant argued that her convictions for simple assault and attempted second-degree cruelty to children should merge under the Double Jeopardy Clause. The government suggested that the appellant's merger argument was foreclosed by *(Jonetta) Lee v. United States*, 831 A.2d 378 (D.C. 2003), in which we affirmed separate convictions for simple assault and attempted cruelty to children. *Alfaro*, 859 A.2d at 154. But as the *Alfaro* court pointed out, "the [merger] issue presented by [appellant] in this case was not raised at all in *(Jonetta) Lee*." *Id.* Because "the judicial mind was not asked to focus upon, and the opinion did not address, the point at issue," the earlier decision had no precedential value as to the merger question. *Id.* (quoting *Hicks v. United States*, 658 A.2d 200, 202 (D.C. 1995)).

Similarly, in *English v. United States*, 25 A.3d 46 (D.C. 2011), co-appellant Darnell Anderson sought reversal of his conviction for fleeing a law enforcement officer in a motor vehicle because he was a passenger in the fleeing car and, in his view, the statute applied only to drivers. *Id.* at 49-50. We noted that our opinion in *Fox v. United States*, 11 A.3d 1282 (D.C. 2011), had recently affirmed convictions under the "fleeing statute" for three appellants, two of them passengers. *English*, 25 A.3d at 50. But the issue Mr. Anderson raised in *English* "was not raised by any of the defendants in *Fox*, and we did not address it." *Id.* Applying our case law regarding *stare decisis*, we held that *Fox* did not foreclose

review of Mr. Anderson's challenge as an issue of first impression. *Id.* (quoting

*Richman Towers Tenants' Ass'n, Inc. v. Richman Towers LLC*, 17 A.3d 590, 610

(D.C. 2011)).[5]

*Caldwell* is no more fatal to Q.B.'s argument than *Lee* or *Fox* was to Ms.

Alfaro's or Mr. Anderson's. Mr. Caldwell did not argue, as Anthony Jones and

Q.B. did, that the indictment failed to charge a valid offense because the trial

court's order was conditional. In fact, the decision in *Caldwell* emphasized that the

appellant did not challenge his conviction at all—he only challenged the "legality

of his sentence for contempt because it exceeds the maximum penalty set forth in

D.C. Code § 23-1329 (c)." 595 A.2d at 964. Thus the "judicial mind" in *Caldwell*

had no occasion to consider the question presented here—whether violation of a

---

[5]  *See also Thompson v. United States*, 546 A.2d 414, 423 & n.14 (D.C. 1988) (noting that "cases in which other crimes evidence has been admitted as part of the prosecution's case in chief to show intent without awaiting a determination whether the defendant would contest it" did not preclude the court from holding that "where intent is not controverted in any meaningful sense [by the defendant], evidence of other crimes to prove intent is so prejudicial *per se* that it is inadmissible as a matter of law"); *Bradford v. Commonwealth*, 345 S.W.3d 245, 247 (Ky. Ct. App. 2011) (noting that an earlier decision affirming a conviction under incest statute for a step-grandparent/step-grandchild relationship was not binding authority because the question whether the statute applied to such conduct "was never raised or considered by this Court," and reversing appellant's conviction on like facts).

condition of pretrial release constitutes contempt under the general contempt statute, D.C. Code § 11-944.

*Vest* does not foreclose Q.B.'s challenge either. While both Q.B. and Mr. Vest argued that the indictment in their case failed to state an offense, Mr. Vest never argued, as Anthony Jones and Q.B. did, that he had not violated a free-standing order that would subject him to a contempt conviction. Instead, his argument was limited to an assertion that a magistrate was not a "judicial officer" under § 11-944 and other "related arguments" about magistrate judges. 834 A.2d at 909-10. As in *Caldwell*, no one asked this court to consider whether violation of a condition of release constitutes disobedience of a court order under § 11-944 at all, and *Vest* likewise has no precedential value on this issue.[6]

To our knowledge, this court has not previously considered whether violation of a condition of pretrial release constitutes an offense under D.C. Code

---

[6] Such a challenge may not even have been viable in *Vest*. The pretrial release order in that case stated—in language that appears on the standardized Pretrial Release Order forms used by the Superior Court in adult criminal cases—that "[a]ny violation of these conditions shall subject you to revocation of release, an order of detention, and prosecution for contempt of court (a fine of not more than $1000 or imprisonment not more than 6 months or both)." At oral argument in this case, however, counsel for Q.B. stated in response to questioning that the family court lacked authority even to impose a free-standing requirement to obey a curfew under pain of contempt on a child who had not been adjudicated delinquent. This issue was not briefed by the parties, and we need not address it.

§ 11-944 when the order contains no "free-standing requirement" to comply with such conditions.[7] For the reasons set forth above, we hold that it does not. *See* (*Anthony*) *Jones*, 51 A.3d at 1292-93. This conclusion does not change the fact that a violation of a condition of pretrial release may be charged as contempt under D.C. Code § 23-1329 (a) (2012 Repl.), which states that violation of a pretrial release order is punishable by revocation of release, an order of detention, or contempt of court. Q.B. could not be charged under that statute, however, because, as a juvenile, he was not "conditionally released pursuant to section 23-1321." D.C. Code § 23-1329 (a).[8]

---

[7] The government cites several other cases in addition to *Caldwell* and *Vest*, but none considered this question either. Three of these cases—*Grant v. United States*, 734 A.2d 174 (D.C. 1999), *Smith v. United States*, 677 A.2d 1022 (D.C. 1996), and *In re Wiggins*, 359 A.2d 579 (D.C. 1976)—considered contempt convictions under D.C. Code § 23-1329, not § 11-944. The fourth, *Payne v. United States*, 932 A.2d 1095 (D.C. 2007), considered a charge under § 11-944, but appellant argued only (1) that his violation of the condition was not intentional and (2) that the order was invalid because literal compliance was impossible. Our research uncovered three additional cases in which appellants were convicted of contempt under § 11-944 for violating a condition of pretrial release, but again, none considered the argument advanced here. *See Seals v. United States*, 844 A.2d 349 (D.C. 2004) (appellant challenged sentence for contempt conviction); *In re Peak*, 759 A.2d 612 (D.C. 2000) (appellant argued that court lacked authority to issue release order forming the basis of contempt conviction); *Parker v. United States*, 373 A.2d 906 (D.C. 1977) (appellant argued that violation of release order was not intentional).

[8] Section 23-1329 applies to "[a] person who has been conditionally released pursuant to section 23-1321." D.C. Code § 23-1329 (a). The pretrial

(continued…)

We affirm the trial court's dismissal of the petition in this case.[9]

*So ordered.*

---

(…continued)

detention and release of children charged with delinquent acts is governed by D.C. Code §§ 16-2310 to -2312 (2012 Repl.).

[9] Q.B. also argues that D.C. Code § 11-944 does not define an "offense" that the government can charge, *see* D.C. Code § 16-2301 (7) (defining a "delinquent act" as "an act designated as an offense under the law of the District of Columbia . . . or under Federal law"), but rather outlines the Superior Court's own power to hold individuals in contempt to enforce its own orders. Q.B. notes that this provision appears in Title 11, entitled "Organization and Jurisdiction of the Courts," and is listed within the "Miscellaneous Provisions" applicable to the Superior Court. The provision discusses the court's "power" without referring to prosecutors or using language suggesting that the provision intends to define an independent crime that the government can charge. This is in contrast to the contempt offense clearly defined in D.C. Code § 23-1329 (a), where the subject of the sentence is the individual himself ("[a] person . . . shall be subject to . . . prosecution for contempt of court"), not the court or "a judge thereof." Section 23-1329 (c) also explicitly notes that both "[a] judicial officer or a prosecutor may initiate a proceeding for contempt under this section." And although this court has upheld convictions under § 11-944 in which the government initiated charges by indictment or information, it does not appear that anyone prior to Q.B. has challenged the government's ability to file charges under D.C. Code § 11-944 at all. Given the grounds on which we affirm the trial court's decision, however, we need not resolve this dispute.